

```
FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAY 17  PM 4:27

LORETTA G. WHYTE
      CLERK
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN LOFORTE | * | CIVIL ACTION |
| VERSUS | * | NO. 00-0115 |
| WHO DAT TOWING, INC. AND | * | SECTION "B" |
| JOSEPH DOMINO, INC. | * | MAGISTRATE 1 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### JOINT PRE-TRIAL ORDER

NOW INTO COURT, through undersigned counsel, come JOHN LOFORTE, plaintiff and WHO DAT TOWING, INC., defendant, in the above entitled and captioned matter, for the purpose of filing this pre-trial outline. A bench trial of this matter is scheduled to take place on Monday, June 11, 2001, at 9:00 a.m. and it is estimated to take two (2) days.

1. A Pre-Trial Conference was held in Chambers on May 17, 2001.

2. APPEARANCES:

   Ronna M. Steele
   on behalf of Plaintiff, JOHN LOFORTE

   Jefferson R. Tillery
   Christopher S. Mann
   on behalf of Defendant, WHO DAT TOWING, INC.



3. PARTIES:

John Loforte, Plaintiff

Who Dat Towing, Inc., owner and operator of a pushboat, the M/V SCOT B.

4. JURISDICTION:

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1333 and general maritime law as this case arises under the admiralty or maritime jurisdiction of the Court. This case involves an alleged injury that occurred on the navigable waters of the United States. In addition, Plaintiff, John Loforte, submits that he is a seaman under 46 U.S.C. 688, also known as "The Jones Act".

5. No motions are currently pending or contemplated.

6. SUMMARY OF MATERIAL FACTS:

**SUMMARY OF MATERIAL FACTS BY PLAINTIFF**

On September 8, 1999, John Loforte was employed as a deckhand aboard the M/V SCOT B, a vessel owned and operated by Defendant, Who Dat Towing, Inc. Mr. Loforte was hired on a word-of-mouth indication from a neighbor that Who Dat was in need of deckhands. Upon inquiring at the dock, Mr. Loforte was hired on sight, with no application procedure, background check, preemployment physical or drug screen. Who Dat has not, to date, produced any paperwork whatsoever which would constitute a "personnel file". At the time of hiring, there was no indication of any intention that the employment would be "temporary". In light of the method by which he was hired and the fact that the M/V SCOT B was operating with one fewer deckhand than normal, Plaintiff had ample reason to believe that the employment was intended to be permanent.

At the time he boarded the vessel, Mr. Loforte was not given a safety manual or any type of safety instruction or training. The Captain showed him around the vessel and they went to work. The singular piece of safety equipment required by Who Dat was steel toed safety boots with non-skid soles, which he was wearing at the time of the accident.

Prior to the accident, the Captain, who had hired Mr. Loforte, determined that Mr. Loforte's qualifications were inadequate to the job. Nonetheless, he did not provide Mr. Loforte with any additional instruction, nor did he remove Mr. Loforte from the job.

As Mr. Loforte was untying the cleat aboard the vessel, the Captain, obviously unaware of Mr. Loforte's whereabouts, moved the vessel, causing Mr. Loforte to fall and sustain injury. Mr. Loforte had no radio, so he was unable to inform the Captain of his fall and the lighting in the area was inadequate to reach the area where he fell.

It comes as no surprise, given the lack of documentation of Mr. Loforte's hire and employment, that Who Dat does not have a report of this accident. It also comes as no surprise that this accident was unwitnessed, since the accident occurred largely because the Captain moved the vessel without knowing the whereabouts of his crew and the fact that the crew was lacking one member.

As a result of this accident, Mr. Loforte suffered herniated discs in his neck, as well as carpal tunnel syndrome, both of which necessitated surgical intervention. Since the date of the accident, neither Who Dat Towing or any of its representatives have made any maintenance payments to Mr. Loforte, nor have they satisfied their cure obligations. As a result of these surgeries, Dr. Wilmot Ploger, Mr. Loforte's treating physician, assigned a ten to fifteen percent physical impairment of his spine. As of September 7, 2000, Mr. Loforte's unpaid medical bills totaled $35,235.87. His unpaid maintenance to date totals approximately $16,500.00.

Since September 7, 2000, Mr. Loforte has returned to Dr. Ploger for recurrent pain in the neck. Dr. Ploger has advised that a second surgery is indicated.

Prior to this accident, on September 26, 1998, Mr. Loforte was involved in an automobile accident in which he was injured. Mr. Loforte suffered a soft tissue injury to his back and wrist. He sought conservative treatment with Dr. Jerome H. Malina, a chiropractor. His treatment for those injuries ended on March 24, 1999. His medical expenses associated with that accident totaled $1,994.72. No MRIs or other objective studies of Mr. Loforte's back or neck were ordered or performed and Dr. Malina has testified in his deposition that at the time he was treating Mr. Loforte, there was absolutely no indication of disc herniation. Mr. Loforte's claim was settled with State Farm Mutual Automobile Insurance Company for a nominal sum and Mr. Loforte discontinued treatment for those injuries, as they had resolved.

Since the date of the accident aboard the M/V SCOT B, Mr. Loforte has not been involved in any other accidents. Who Dat has employed the services of a private investigator, Mr. Pierre Gautreaux, who will testify that he found no indication from Mr. Loforte's friends and neighbors that Mr. Loforte was not hurt or that there is any explanation for his injuries other than the fall aboard the M/V SCOT B.

Mr. Loforte has not worked since the date of this accident. Mr. Loforte has a consistent work history as both a screenprinter and a deckhand. Dr. Cornelius Gorman, a vocational expert, has tested and interviewed Mr. Loforte and has reviewed his extensive medical reports. Dr. Gorman opines that a return to work will be difficult for Mr. Loforte absent a drastic physical recovery.

Dr. Randolph Rice, an economist, has evaluated Mr. Loforte's situation and has concluded that Mr. Loforte has lost approximately $133,217.00 in wages, past and future, as a result of this accident. That estimate was calculated before Dr. Ploger made the recommendation for an additional surgery. Obviously, a second surgery would change the amount of Mr. Loforte's total medical expenses and would involve a higher degree of physical impairment.

## SUMMARY OF MATERIAL FACTS BY DEFENDANT

Who Dat Towing, Inc. is the owner of the M/V SCOT B, an inland water pushboat operating on the lower Mississippi River. The M/V SCOT B operates with one captain and one deckhand at all times. On or about September 8, 1998, plaintiff, John Loforte, approached the captain of the M/V SCOT B seeking temporary employment as a deckhand. Mr. LoForte presented himself as an experienced deckhand and was hired to fill in for the regular deckhand on a temporary basis. Less than 36 hours after being on the vessel, Mr. LoForte alleges that he fell while untying a cable from the bow of a barge that the M/V SCOT B was in the process of moving. There were no witnesses to Mr. LoForte's alleged accident, and Mr. LoForte did not report his alleged accident to the captain of the vessel. Mr. LoForte did not inform anyone affiliated with the defendant of his alleged accident until at the earliest over three weeks after his accident allegedly occurred and after he had hired an attorney and received medical treatment.

Mr. LoForte was an experienced deckhand engaged in the simple task of untying a cable. No special equipment or training was required.

Mr. LoForte alleges he injured his neck and right wrist as a result of his alleged accident. However, less than one year prior to his alleged accident aboard the vessel, Mr. LoForte was involved in an automobile accident in which he injured his back, neck and right arm. His right arm injury was severe enough that it required him to resign from his job as a screen printer. Mr. LoForte received at least six months of treatment for his symptoms and alleged continued pain at least through July, 1999, prior to receiving an insurance settlement. Therefore, even if the accident aboard the vessel occurred as Mr. LoForte alleges, any injuries which he suffered were the result of prior events and not the result of his accident aboard the vessel.

Defendant contends that Mr. LoForte did not fall as he alleges in his petition, and even if the alleged accident did occur, Mr. LoForte was not injured as a result. Any medical treatment that Mr. LoForte received after his alleged accident was attributable to prior accidents that was in no way related to Mr. LoForte's 48-hours aboard the M/V SCOT B.

Mr. LoForte has a very sporadic work history with a very inconsistent earnings history. Since Mr. LoForte is able to go back to work at minimum wage or higher, Mr. LoForte has suffered no loss of wage earning capacity and therefore has no future wage loss. Furthermore, no future medical care is anticipated or needed.

7. UNCONTESTED MATERIAL FACTS

    1) Who Dat Marine Towing is the owner of the M/V SCOT B.

    2) John LoForte was employed by Who Dat Towing, Inc. on September 9, 1999 as a deckhand aboard the M/V SCOT B.

    3) Mr. LoForte was a Jones Act seaman on September 9, 1999.

    4) Mr. LoForte was involved in an automobile accident on September 29, 1998 after which he complained of back, neck and right wrist pain.

    5) Mr. LoForte's gross earnings for the year 1996 was $6,421.45. Mr. LoForte's gross earnings for the year 1997 was $5,966.75. Mr. LoForte's gross earnings for the year 1998 was $6,276.76. Mr. LoForte's gross earnings for the year 1999 was $8,383.62.

    6) Mr. LoForte had worked as a deckhand on several occasions prior to September 9, 1999.

    7) Mr. LoForte was earning $70/day as a deckhand aboard the M/V SCOT B on September 9, 1999.

    8) The normal work shift for a deckhand at Who Dat Towing, Inc. was 7 days on, 7 days off, as of September 9, 1999.

8. CONTESTED ISSUES OF FACT:

    1) Whether Mr. LoForte sustained an accident during his employ with Who Dat Towing, Inc.

    2) Whether Mr. LoForte's injuries can be attributed to his alleged September 9, 1999 accident.

    3) Whether Mr. LoForte's injuries can be attributed to prior accidents.

    4) Whether Mr. LoForte requires any additional medical treatment, specifically a second cervical fusion.

    5) Whether Mr. LoForte is capable of returning to work in any capacity.

    6) Whether the alleged accident was caused by plaintiff's sole negligence or contributory negligence.

    7) Whether any unseaworthy condition existed aboard the M/V SCOT B.

8)  Whether plaintiff's alleged accident or injuries were caused by any fault or negligence on the part of the defendant.

9)  Whether the cause of plaintiff's alleged accident or injuries was the plaintiff's sole or contributory negligence in failing to maintain a proper lookout or failing to use proper technique in untying a cable.

10) Whether the cause of Plaintiff's accident or injuries was the failure of the Captain to account for the whereabouts of his crewmembers before moving the vessel.

11) Whether the cause of Plaintiff's accident or injuries was the lack of adequate lighting and/or safety instruction and/or improper manning of the M/V SCOT B.

9. CONTESTED ISSUES OF LAW

1)  Whether plaintiff's alleged accident was caused by his sole negligence.

2)  Whether plaintiff's alleged accident was caused by his contributory negligence.

3)  Whether the M/V SCOT B was unseaworthy and, if so, was the alleged unseaworthy condition a cause in fact of plaintiff's alleged accident.

4)  Whether Who Dat Towing, Inc. was negligent, and, if so, whether the alleged negligence played any role in plaintiff's alleged accident.

5)  Whether plaintiff is entitled to maintenance and cure.

10. EXHIBITS:

1.  Plaintiff's Exhibits:

Any documents provided by plaintiff to defendant pursuant to discovery;

1)  Any documents provided by defendant to plaintiff pursuant to discovery;

2)  Any and all depositions transcripts taken for perpetual testimony;

3)  Internal Revenue Service documents;

4)  Social Security Administration documents;

5)  Medical records of Norman D. Ott, III, M.D.;

6) Medical records of Wilmot F. Ploger, M.D.;

7) Psychovocational report by Cornelius E. Gorman, Ph.D.;

8) Economic report of Dr. G. Randolph Rice;

9) Medical records from Meadowcrest Hospital Emergency Room;

10) Medical records from Diagnostic Imaging Services;

11) Medical records from Healthsouth;

12) Medical records from New Orleans Neurological Assessment Center;

13) Pay roll documents from Who Dat Towing, Inc.;

14) Any exhibit listed by any other party.

B) Defendant's Exhibits:

1) State Farm Insurance Company's claims file related to plaintiff's accident of September 26, 1998.

2) All reports issued by John Theriot, CPA, referencing plaintiff's past and future wage loss.

3) Vocational Rehabilitation Reports prepared by Margo Hoffman.

4) Medical records and reports of Dr. Robert Steiner.

5) Medical records of Dr. Wilmot Ploger;

6) Medical records of Dr. Chris Digrado.

7) Insurance Policy No. A&P98/176 issued by Royal Insurance Company of America.

8) Deckhand Manual.

11. DEPOSITION TESTIMONY:

At this point, no deposition testimony will be offered into evidence at trial in lieu of live testimony.

1. CHARTS, GRAPHS AND MODELS:

   At this time, plaintiff does not intend to utilize any charts, graphs, models, schematics, diagrams or similar objects.

   At this time, defendant does not intend to utilize any charts, graphs, models, schematics, diagrams or similar objects.

2. WITNESSES:

   A) PLAINTIFF'S WITNESSES:

   1) John Loforte, 121 Hamilton Street, Gretna, LA 700534; Mr. Loforte will testify regarding the facts of the accident, his injuries, his medical bills and the nature of his losses and damages as a result of the accident.

   2) Wilmot F. Ploger, M.D., 3322 Canal Street, New Orleans, LA 70119.
   Dr. Ploger will testify as to Mr. LoForte's current medical status as well as causation.

   3) Cornelius E. Gorman, Ph.D., Psychovocational, Gorman & Gorman, Inc., 704 Main Street, Madisonville, LA 70447.
   Dr. Gorman will testify as a Vocational Rehabilitation Expert.

   4) Dr. G. Randolph Rice, economist, Louisiana State University, Economics 7048 Monteau Court, Baton Rouge, LA 70809.
   Dr. Rice will testify as to Mr. LoForte's past and future economical losses

   5) Norman D. Ott, III, M.D., Metropolitan Health Group, 2930 Canal Street, Suite 401, New Orleans, LA 70119.
   Dr. Ott will testify to Mr. LoForte's medical status and causation.

   6) Kevin Stasney, M.D., Meadowcrest Hospital Emergency Room, Emergency Phys Meadowcrest, 2500 Belle Chasse Highway, Gretna, LA 70056.
   Dr. Stasney will testify to Mr. LoForte's medical status and causation.

   7) Daniel R. Rovira, M.D., Diagnostic Imaging Services; 3625 Houma Boulevard, Metairie, LA 70006; Dr. Rovira will testify regarding an MRI of Mr. Loforte's cervical spine which was performed on September 16, 1999, the nature and causation of his injuries.

   8) Charles Aprill M.D., 2718 Cadiz Street, New Orleans, LA 70115. Dr. Aprill will testify regarding a Computerized Tomography of Mr. Loforte's cervical spine which was performed on September 20, 2000 and the nature and causation of Mr. Loforte's injuries.

9)  Kim Morris, LOTR, Healthsouth; 555 Lapalco Blvd., Suite 102, Gretna, LA 70056.
    Kim Morris will testify to the physical therapy treatments received by Mr. LoForte.

10) Gavin Matthews, P.T., Healthsouth, 555 Lapalco Blvd., Suite 102, Gretna, LA 70056.
    Gavin Morris will testify to the physical therapy treatments received by Mr. LoForte.

11) Morteza Shamsnia, M.D., New Orleans Neurological Assessment Center, New Orleans Neurological Assessment Center, 2930 Canal Street, Suite 200, New Orleans, LA 70119.
    Dr. Shamsnia will testify to the results of the neurological tests performed on Mr. LoForte.

12) A designated representative of the Social Security Administration;

13) A designated representative of the Internal Revenue Service;

14) Phyllis Badeaux, 125 Ehret Place, Marrero, Louisiana 70072.
    Mrs. Badeaux will testify as to matters related to the employment of Mr. LoForte and the operations of the company.

15) Any witness listed by any other party.

16) Kenney Alexander, plaintiff's neighbor;

17) Cathy Dickert, plaintiff's neighbor; and

18) Cathy Loforte, plaintiff's ex-spouse.


Plaintiff filed his original Witness List on August 17, 2000 and filed a Supplemental Witness List on August 24, 2000.


B)  DEFENDANT'S WITNESSES:

1)  Richard Hebert, 510 Braddock Drive, Houma, Louisiana 70363.
    Mr. Hebert will testify to matters related to Mr. LoForte's employment aboard the M/V SCOT B as well as circumstances surrounding his alleged accident.

2)   Phyllis Badeaux, 125 Ehret Place, Marrero, Louisiana 70072.
Mrs. Badeaux will testify as to matters related to the employment of Mr. LoForte and the operations of the company.

3)   Margo Hoffman, American Rehabilitation Consultant Services, Inc., 6600 Plaza Drive, Suite 200, New Orleans, Louisiana 70127.
Ms. Hoffman will testify as a Vocational Rehabilitation Expert.

4)   John Theriot, CPA, Malcolm M. Dienes and Co., 301 Magazine Street, 2nd Floor, New Orleans, Louisiana 70130.
Mr. Theriot will testify as to Mr. LoForte's past and future economical losses.

5)   Michelle Guin, Claim Specialist, State Farm Insurance Company, 834 South Clearview Parkway, Harahan, Louisiana 70123-3445.
Ms. Guin is a Claims Specialist with State Farm Mutual Automobile Insurance Company and will testify to facts and circumstances surrounding Mr. LoForte's September 26, 1998 car accident.

6)   Robert S. Toale, 505 Weyer Street, Gretna, Louisiana 70053.
Mr. Toale will testify as to matters related to Mr. LoForte's claim resulting from the September 26, 1998 car accident.

7)   Dr. Robert Steiner, 3525 Prytania Street, Suite 501, New Orleans, LA 70115.
Dr. Steiner will testify as to Mr. LoForte's current medical status as well as causation.

Defendant filed its original Witness List on July 24, 2000 and filed a Supplemental Witness List on March 29, 2001.

14. This matter is a non-jury case.

Plaintiff will submit findings of fact and conclusions of law along with a separate trial memorandum not less than five (5) full working days prior to the trial date unless otherwise directed by the Court.

Defendant will submit suggested findings of fact and conclusions of law along with a separate trial memorandum not less that five (5) full working days prior to the trial date unless otherwise directed by the Court.

15. The issue of liability will not be tried separately from that of quantum.

16. Not applicable.

17. Trial shall commence on June 11, 2001, at 9:00 a.m. Defendant estimates that trial of this matter should last no more than two days and possibly finish in one day.

    Plaintiff estimates that trial of this matter will last at least two days and possibly three days.

18. This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19. Possibility of settlement of this case was considered.

                              Respectfully submitted,

                              _____
                              Ronna M. Steele (#20006)
                              301 Huey P. Long Avenue
                              Gretna, LA 70053
                              (504) 361-4433
                              (504) 361-8288 (fax)

                              **Attorney for Plaintiff, John LoForte**

                              _____
                              JEFFERSON R. TILLERY (BAR NO. 17831)
                              CHRISTOPHER S. MANN (BAR NO. 26397)
                              Jones, Walker, Waechter, Poitevent,
                                   Carrere & Denegre, L.L.P.
                              201 St. Charles Avenue, 48th Floor
                              New Orleans, LA 70170-5100

                              **Attorneys for Defendant, Who Dat Towing, Inc.**

                              _____
                              Honorable Ivan L.R. Lemelle
                              United States District Judge