# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

*PLEASE FILE
IN RECORD*

*FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2001 JUN -5 P 1: 10
LORETTA G. WHYTE
CLERK*

| | | |
|---|---|---|
| JOHN LOFORTE | * | CIVIL ACTION |
| | * | |
| | * | NO.  00- 0115 |
| versus | * | |
| | * | SECT. B, MAG. (1) |
| WHO DAT TOWING, INC. | * | |
| and JOSEPH DOMINO, INC. | * | |
| | * | |

**************************************************************************

## PRE-TRIAL MEMORANDUM, PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

Defendant, Who Dat Towing, Inc. ("Who Dat"), submits the following Pre-Trial

Memorandum, Proposed Findings of Fact and Conclusions of Law in accordance with the

Trial Preparation Order entered by this Court on May 21, 2001.

Plaintiff, John LoForte, filed suit for injuries allegedly sustained on September 8,

1999 while Mr. LoForte was temporarily employed as a deckhand aboard the M/V SCOT B,

a towboat owned and operated by Who Dat Towing.  LoForte alleges that he fell while in the

process of untying a cable from the bow of a barge that the M/V SCOT B was preparing to

move.  LoForte alleges that he injured his neck and right wrist as a result of this accident.

This alleged accident was unwitnessed, and Mr. LoForte did not report the accident to the

captain.  In fact, Mr. LoForte did not inform anyone with Who Dat of his alleged injury until

at least three weeks after his alleged accident occurred and after he had contacted an attorney

and received medical treatment.

____Fee_____
____Process_____
**X** /Dktd *BC*
____CtRmDep
Doc.No. 5 0

The evidence presented at trial will establish that Mr. LoForte cannot carry his burden of proof to establish that an accident occurred or, alternatively, to establish that any of his medical complaints can be attributed to this alleged accident. Furthermore, the evidence will demonstrate that even if the accident did occur as Mr. LoForte alleges, Who Dat Towing was not negligent nor was the M/V SCOT B unseaworthy. In the unlikely event that Mr. LoForte can establish any fault on the part of Who Dat, the evidence will clearly demonstrate that Mr. LoForte is currently capable of earning higher wages than he was at the time of the accident such that he has no future wage loss and his damages are therefore minimal.

## I. MR. LOFORTE CANNOT PROVE AN ACCIDENT OCCURRED ABOARD THE M/V SCOT B

In order for a seaman to pursue claims under either the Jones Act or the general maritime law, the seaman must initially prove by a preponderance of the evidence that he suffered an injury while in the service of the vessel. Fields v. Poole Offshore, Inc., 182 F.3d 353 (5th Cir. 1999). Mr. LoForte cannot even meet this threshold requirement. The sole evidence supporting Mr. LoForte's version of events is the self-serving testimony of Mr. LoForte himself. Mr. LoForte did not report his alleged accident to the captain when it occurred or when Mr. LoForte ended his hitch the next morning. In fact Mr. LoForte told the captain to call him again if he needed any deckhand assistance in the future. Mr. LoForte did not inform anyone affiliated with Who Dat Towing of his alleged accident until at least three weeks after the alleged accident occurred after he had hired an attorney and already

undergone medical treatment. Mr. LoForte's testimony by itself is insufficient to carry this threshold burden.

## II. MR. LOFORTE DID NOT SUSTAIN AN INJURY ABOARD THE M/V SCOT B

Even if Mr. LoForte can establish that his alleged accident did occur, this accident was not the cause of Mr. LoForte's medical problems. The unrefuted evidence will establish that less than twelve months prior to the alleged September 8, 1999 accident, Mr. LoForte was involved in a car accident in which he injured his neck, back and right wrist. Mr. LoForte underwent at least six months of medical treatment for these complaints, and the medical records establish that Mr. LoForte's complaints of right wrist pain never resolved. The evidence will establish that Mr. LoForte had significant degenerative disk disease at the C5-6 and C6-7 level that had occurred over a long period of time and which could not have been caused by any alleged September 8, 1999 accident.

The burden of proof is on the plaintiff to prove that the accident caused the injury of which he now complains, and where there are several plausible explanations for the plaintiff's condition, the plaintiff does not meet his burden of proof. Fournier v. Petroleum Helicopters, Inc., 665 F. Supp 483 (E.D. La. 1987). The testimony of Dr. Robert Steiner will demonstrate that based on Mr. LoForte's prior trauma and pre-existing conditions, no doctor can render an opinion relating Mr. LoForte's need for medical treatment to the alleged September 8, 1999 accident. When the plaintiff can offer no objective, reliable medical indications relating his trauma to an accident, the plaintiff has not met his burden of proof.

N0677363.1                              - 3 -

Fournier, 665 F.Supp at 487.  Accordingly, Mr. LoForte cannot meet his burden of proof on the issue of medical causation, and Who Dat Marine Towing submits that Mr. LoForte is not entitled to recover damages for the surgeries performed by Dr. Ploger.

## III.  WHO DAT TOWING WAS NOT NEGLIGENT

Even if Mr. LoForte can establish that an accident occurred that caused his injuries, the evidence will show that Who Dat Towing was not negligent.  In order for a seaman to prevail in a Jones Act cause of action, the seaman has the burden of proof to show a negligent act on the part of the Employer that played a part in causing the seaman's injury. The seaman must prove the existence of a duty, the negligent violation of this duty by his Employer, and finally, a causal relationship of the violation to the injury sustained.  Martin J. Norris, *The Law of Seaman*, 4th Ed. §30:34, p. 460.    Negligence is not presumed, but must be affirmatively proven by a preponderance of the evidence.  Jones v. Terrebonne Manhaden, Inc., 429 F.2d 575 (5th Cir. 1970).  Mr. LoForte will not be able to carry this burden of proof.

The only cognizable allegations of negligence that Mr. LoForte has raised are that the captain's alleged movement of the vessel played a part in Mr. LoForte's accident.  However, the evidence will show that even if the captain did move the vessel while Mr. LoForte was in the process of untying the cable, this movement played no role whatsoever in Mr. LoForte's alleged accident.  The evidence will demonstrate that Mr. LoForte was pulling on a tangled cable with both hands when the cable came loose causing Mr. LoForte to lose his balance.  The evidence will demonstrate that Mr. LoForte's alleged accident was just that -

N0677363.1                                      - 4 -

an accident.

## IV.  THE M/V SCOT B WAS NOT UNSEAWORTHY

The evidence presented at trial will also demonstrate that Mr. LoForte cannot carry

his burden to establish that the M/V SCOT B was unseaworthy.  Under the general maritime

law, the vessel/owner has a non-delegable duty to furnish a vessel that is reasonably fit for

its intended purposes.  Mitchell v. TRAWLER RACER, Inc., 362 U.S. 539 (1960).

> The standard is not perfection, but reasonable fitness; not a ship
> that will weather every conceivable storm or withstand every
> imaginable peril of the sea, but a vessel reasonably suitable for
> her intended service.

Id. at 550.

While it is true that the requirement to furnish a seaworthy ship is absolute, the duty

is not limitless.  The owner is not obliged to furnish an accident-free ship or a perfect ship.

The ship owner has a duty only to furnish a vessel reasonably fit for its intended use.  The

standard is not perfection but reasonable fitness.    Garcia v. Murphy Pacific Marine

Salvaging Co., 476 F.2d 303 (5th Cir. 1973); Boudoin v. Lykes Bros. Steamship Co., 348

U.S. 382 (1955).  If a seaman is injured in one of the normal hazards or risks of a business

of which he is engaged that is the fault of anyone else, the ship being seaworthy and the

equipment being seaworthy, he is not entitled to recover damages from his employer.

Massey v. Nick Williams Co., 414 F.2d 675 (5th Cir. 1969).

In order for the plaintiff to prevail on an unseaworthiness cause of action, the plaintiff

N0677363.1                          - 5 -

must prove that the alleged unseaworthy condition was the proximate cause of his injuries. Philips v. Western Company North America, 953 F.2d 923 (5th Cir. 1992); Reyes v. Vantage Steamship Co., 558 F.2d 238 (5th Cir. 1977). The unseaworthy condition must play a substantial part in bringing about or actually causing the plaintiff's injury, and that injury must be either the direct result or a reasonably probable consequence of the unseaworthy condition.

Mr. LoForte will not be able to carry this burden of proof. The evidence will show that Mr. LoForte's alleged accident was just that - an accident. He alleges there was a tangle in a cable aboard a barge owned and operated by an unknown party not part of this litigation. While Mr. LoForte was pulling on this cable in an attempt to untie the barge, the cable came loose causing Mr. LoForte to lose his balance. Mr. LoForte has alternately claimed that the lighting was inadequate or that the lack of radio communication played a part in his accident. However, the evidence will demonstrate that even if the sun were brightly shining and the captain were in constant communication with Mr. LoForte, the cable would still have come loose, and Mr. LoForte would still have lost his balance. No negligence on the part of Who Dat or unseaworthy conditions of the M/V SCOT B played any role whatsoever in this alleged accident.

## V.  MR. LOFORTE'S NEGLIGENCE WAS THE SOLE OR AT LEAST A SUBSTANTIAL CAUSE OF HIS ACCIDENT

In Gautreaux v. Scurlock Marine, Inc., 107 F.3d 321 (5th Cir. 1997), the United States

N0677363.1                                    - 6 -

Fifth Circuit Court of Appeals clarified the proper standard of care in Jones Act cases

between the Employer and a Seaman/Employee. The law had previously been misinterpreted

that a marine employer, in this instance Who Dat, had a high duty of care to its employees

whereas the seaman had a lesser duty of slight care to protect himself. The Fifth Circuit

reversed this rule and delineated the respective duties owed:

> Nothing in the text or structure of the FELA/JONES ACT
> legislation suggests that the standard of care to be attributed to
> either an employer or employee is anything different than
> ordinary prudence under the circumstances.
>
> . . .
>
> A seaman, then, is obligated under the Jones Act to act with
> ordinary prudence under the circumstances.    There are
> circumstances of a seaman's employment which include not
> only his reliance on his employer to provide a safe work
> environment but also his own experience, training, or education.
> The reasonable person standard, therefore, and the Jones Act
> negligence action becomes one of the reasonable seaman in like
> circumstances.    To hold otherwise would unjustly award
> unreasonable conduct and would fault seaman only for their
> gross negligence, which was not the contemplation of Congress.

Id. at 338-339.

Under the Jones Act, the doctrine of comparative negligence applies and bars an

injured party from recovering damages to the extent that they are sustained as a result of his

own fault. Miles v. Melrose, 882 F.2d 976 (1989), aff'd sub nom, Miles v. Apex Marine

Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed. 2d 275 (1990). Contributory negligence

mitigates a vessel owner's liability when an injured seaman has been negligent in breaching

N0677363.1                                    - 7 -

a duty to act or refrain from acting.  Thezan v. Maritime Overseas Corp., 708 F.2d 175 (5th Cir. 1993) (seaman held 90% contributorily negligent for his own accident); Alvarez v. J.Ray McDermott & Co., 674 F.2d 1037 (5th Cir. 1982) (seaman held 90% contributorily negligent for his own accident).

A seaman has a duty to follow a safe course of conduct of which he knows or should have known and as relatively available to avoid what he believes is or may be an unsafe course of action.  That is, where a seaman has some control over the work activity such that he can perform a task in a reasonably safe manner, his failure to do so is to be considered negligent on his part.  Bobb v. Modern Product, Inc., 648 F.2d 1051 (5th Cir. 1981); Fontenot v. Teledyne Movable Offshore, Inc., 714 F.2d 17 (5th Cir. 1983).  The evidence presented at trial will show that Mr. LoForte's actions played a significant part in causing his alleged accident.

## VI. MAINTENANCE AND CURE

The evidence will show that since Mr. LoForte was not injured in the service of the ship, Who Dat Towing is not required to pay maintenance and cure.

## VII. MR. LOFORTE IS NOT ENTITLED TO ANY FUTURE LOST WAGES

The evidence will conclusively establish that Mr. LoForte has suffered no loss of earnings as result of his alleged accident aboard the vessel. Mr. LoForte has a very sporadic work and earnings history.  Mr. LoForte's gross earnings for the four years prior to his alleged injury were as follows: 1996 - $6,421.45; 1997 - $5,966.75; 1998 - $6,276.76; and

N0677363.1                                   - 8 -

1999 - $8,382.62. If Mr. LoForte were able to return to work even at only minimum wage, which the evidence will clearly demonstrate, he would have annual earnings of approximately $10,712.00. Therefore, Mr. LoForte will have no future wage loss.

Any attempt to base future wage loss on Mr. LoForte's earnings during his 72 hours while he was employed by Who Dat is without merit. Mr. LoForte was a <u>temporary</u> employee. After his three-day hitch was over, he was relieved by the same deckhand whose position he had temporarily assumed. The testimony will clearly show that there was no intent to hire Mr. LoForte on a permanent basis.

## VIII. MR. LOFORTE IS CURRENTLY CAPABLE OF RETURNING TO WORK

The medical testimony of Dr. Robert Steiner will conclusively establish that Mr. LoForte is currently capable of working at least at the light duty level. Mr. LoForte himself has indicated a desire and willingness to return to work. The testimony of Margo Hoffman, a certified Vocational Rehabilitation Counselor, will demonstrate numerous employment opportunities available to Mr. LoForte that fall within his current physical restrictions and that will allow him to earn annual wages greater than any year for which Mr. LoForte's earning records are available.

## PROPOSED FINDINGS OF FACT

1.     Who Dat Marine Towing was the owner of the M/V SCOT B on September 8, 1999.

2.   John LoForte was temporarily employed by Who Dat Towing, Inc. on
     September 8, 1999 as a deckhand aboard the M/V SCOT B.

3.   Who Dat Towing was covered under a Protection and Indemnity policy issued
     by Royal Insurance Company of America, Policy No. A&P98/176, which
     policy is the best evidence of its terms, conditions and exclusions.

4.   On the evening of September 8, 1999, Mr. LoForte was engaged in untying a
     cable at the bow of a barge to which the M/V SCOT B was made up. This
     cable had been put in place by unknown third parties over whom Who Dat
     exercised no direction or control.

5.   There were no witnesses to Mr. LoForte's alleged accident, and Mr. LoForte
     did not report his alleged accident to the captain of the M/V SCOT B at the
     time the alleged accident occurred.

6.   Mr. LoForte has failed to prove by a preponderance of the evidence that an
     accident did occur aboard the M/V SCOT B.

7.   Mr. LoForte was an experienced deckhand who was adequately trained to
     perform the simple task of untying a cable.

8.   Mr. LoForte was provided all necessary equipment to perform his task of
     untying the cable.

9.   Mr. LoForte contacted an attorney and received medical treatment prior to
     informing anyone associated with his employer, Who Dat Towing, that an

N0677363.1                                    - 10 -

alleged accident occurred.

10.   Mr. LoForte underwent surgery without providing his employer, Who Dat Towing, an opportunity to conduct an independent medical examination to determine the appropriateness of the suggested surgery.

11.   Mr. LoForte was involved in a car accident on September 25, 1998, less than twelve months prior to the alleged accident that is the basis of this suit, in which he injured his neck, back and right wrist.

12.   Mr. LoForte's complaints of neck pain and right wrist pain subsequent to the September 26, 1998 car accident were identical to his complaints of neck pain and right wrist pain following his alleged September 8, 1999 accident.

13.   Mr. LoForte has failed to prove by a preponderance of the evidence that the surgeries performed by Dr. Ploger were causally related to the alleged September 8, 1999 accident.

14.   Since Mr. LoForte has failed to prove that his alleged September 8, 1999 accident occurred, he is not entitled to maintenance and cure.

15.   In the alternative, defendant, Who Dat Towing, has demonstrated the existence of significant doubt regarding the occurrence of Mr. LoForte's alleged September 8, 1999 accident such that Who Dat Towing was justified in not paying Mr. LoForte's maintenance and cure.

16.   Mr. LoForte was only hired by Who Dat Towing as a temporary replacement

for the regular deckhand and therefore had no expectation of continued employment.

17.    If Mr. LoForte were able to return to a job that paid even only minimum wage, Mr. LoForte would have no future wage loss due to his sporadic work history.

18.    Since Mr. LoForte is currently capable of returning to work at jobs identified by Who Dat Towing that have wages of minimum wage or higher, Mr. LoForte is not entitled to any damages for future wage loss.

19.    Mr. LoForte has failed to prove by a preponderance of the evidence that a second cervical surgery is necessary.

20.    Mr. LoForte has failed to prove by a preponderance of the evidence that a second cervical surgery would be beneficial.

21.    Any delay in the solidifying of Mr. LoForte's cervical fusion is more likely than not caused by Mr. LoForte's being a heavy smoker.

22.    Any movement by the M/V SCOT B during the process of Mr. LoForte's untying the cable did not play any role in Mr. LoForte's alleged accident. Mr. LoForte's alleged accident, if it occurred, was solely caused by Mr. LoForte's own action.

## PROPOSED CONCLUSIONS OF LAW

1.    Mr. LoForte has failed to prove by a preponderance of the evidence that an accident occurred.

2.    As a matter of law, the actions of Who Dat Towing personnel aboard the M/V SCOT B were reasonable under the circumstances, and Who Dat Towing was therefore not negligent. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959).

3.    As a matter of law, the M/V SCOT B was not unseaworthy. Blnacq v. Hopag Lloyd A.G., 986 F.Supp 376 (E.D. La. 1999).

4.    Mr. LoForte has not met his burden of prof to establish that it was more probable than not that the injuries he complained of were caused by trauma suffered in his alleged September 8, 1999 accident. Fournier v. Petroleum Helicopters, Inc., 665 F.Supp 483 (E.D. La. 1987).

5.    Since Mr. LoForte has demonstrated no loss of wage earning capacity, he is not entitled to an award for future lost wages. Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir. 1982), overruled on other grounds by Gautreaux v. Scurlock Marine, 107 F.3d 321 (5th Cir. 1987); Lambeth v. Edison Chouest Offshore, 1999 WL 1037929 (E.D. La. November 15, 1999).

Respectfully submitted,

JEFFERSON R. TILLERY (BAR NO. 17831)
CHRISTOPHER S. MANN (BAR NO. 26397)
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170-5100
Telephone: (504) 582-8000
**Attorneys for Defendant,**
**Who Dat Towing, Inc.**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record by depositing a copy of same in the United States Mail, properly addressed, postage prepaid, this _4_ day of June, 2001.