



PLEASE FILE IN RECORD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN LOFORTE | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 00-0115 |
| | * | |
| WHO DAT TOWING, INC. AND | * | SECTION "B" |
| JOSEPH DOMINO, INC. | * | MAGISTRATE 1 |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S PRETRIAL MEMORANDUM

MAY IT PLEASE THE COURT:

This is a case brought pursuant to 28 U.S.C. Section 1333, in the general maritime law of the United States. Plaintiff, John Loforte, contends on or about September 8, 1999, he was employed as a deck hand aboard the M/V Scot B, a vessel owned and operated by defendant, Who Dat Towing, Inc. Plaintiff contends he was sought work with Who Dat Towing after receiving a word-of-mouth indication from a neighbor that Who Dat was in need of deck hands. Upon inquiring at the dock, plaintiff was hired on sight, with no application procedure, back ground check, pre-employment physical, or drug screen required for employment. Despite the fact that Mr. Loforte was not an experienced seafarer,



and the fact that the captain who hired him determined that his qualifications were inadequate for the job, Loforte was hired after a perfunctory tour of the vessel. He was not given a safety manual or any kind of safety instruction or training. The only apparent pre-qualification required of him that he posses a pair of steel toed safety boots with non-skid soles, as Mr. Loforte was wearing such equipment at the time of his application, he was hired on the spot. Mr. Loforte received no particularized instruction about the nature of the duties that would be required of him, nor was he provided with an experienced co-worker. At the time of his hiring, Loforte was not told that any of his employment "temporary" (as now contended by Who Dat Towing), and, in light of the method by which he was hired and the fact that the M/V Scot B was operating with one fewer deck hand than normal, plaintiff had ample reason to believe that his employment was intended to be permanent in nature.

On the date in question, plaintiff was attempting to untie the cleat aboard the vessel, to permanent the vessel to get underway. While he was untying the cleat, the captain, obviously unaware of plaintiff's whereabouts, moved the vessel unexpectedly. This caused Mr. Loforte to fall an sustain injuries. As he was not equipped with a radio, he was unable to inform the captain of his fall. The lighting in the area around where he fell was alleged to be inadequate, and was a causative factor in the accident.

As a result of this accident, Mr. Loforte sustained herniated discs in his cervical spine, and also sustained a carpal tunnel injury. Both of these injuries required surgical intervention. Mr. Loforte continues to suffer from recurrent pain in his neck following surgery; and his treating physician, Dr. Wilmot Ploger, has advised him that second surgery is needed. At no time since plaintiff's accident has Who Dat Towing or any of his representative made any maintenance and/or cure payments to Mr. Loforte; and his unpaid medical bills through September 7, 2000 total $35,235.87. His unpaid maintenance to date total $16,500.00. At the time of his accident, plaintiff was being paid $70.00 per day.

In addition to asserting as a defense that plaintiff's employment was intended by the employer to be "temporary" (despite a paucity of evidence to this assertion), defendants also assert that the accident as alleged by Loforte simply did not occur. In the "proof" of this assertion they point out that no accident report was prepared by the captain. Given the fact that Who Dat Towing maintained *no personnel records whatever* (including an employment application, physical examination or any other documents), it is not surprising that Who Dat Towing might lack a report of this accident. They also assert as "defense" the fact that the accident was unwitnessed. This also can come as no surprise, as it is clear that the vessel was inadequately crewed at the time of the incident; only Loforte and the captain were assigned to the vessel. As the captain was in the wheel house, and thus unable to observe conditions on the deck, Who Dat Towing

cannot now be heard to assert that a lack of an eyewitness should be bootstrapped into a finding that the accident did not occur.

Prior to the incident aboard the M/V Scot B, plaintiff, John Loforte, had been involved in but one single accident wherein he was injured. On or about September 26, 1998, plaintiff was involved in an automobile accident in which he received soft tissue injuries to his back and wrist. He sought conservative treatment with conservative chiropractic treatment with Dr. Jerome H. Malina. Loforte was treated by Dr. Malina from September 26, 1998 to March 24, 1999. No MRI or other objective diagnostic studies of Mr. Loforte's back, neck, or wrist were ordered or performed; and Dr. Malina has testified by deposition at the time he was treating Loforte there was *absolutely no indication* of any disc herniation or other injury to his cervical spine. Loforte made a claim in association with the automobile accident, and it was settled without the necessary of litigation by State Farm Automobile Insurance Company for a nominal sum. As Mr. Loforte had resolved any injury sustained in the injury, he discontinued treatment for those injuries.

This claim is brought under the Jones Act (46 U.S.C. Section 688 et set) and the general maritime law. Each of these will be addressed separately.

## THE JONES ACT

The Jones Act provides a cause of action in negligence for any seaman injured in the course and scope of his employment. The general principals of

negligence apply to the determination of a claim for maritime negligence under the Jones Act, both the employer and seaman are obligated to act with ordinary prudence under the circumstances. *Jenkins v. Sonat Offshore U.S.A., Inc.*, 96 2504 (La.App. 1st Cir. 12/29/97); 705 So.2nd 1184; *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3rd 331 (5th Cir. 1997).

The Jones Act employer is deemed negligence if he fails to exercise reasonable care to maintain a reasonably work environment. The burden of proof of Jones Act negligence is **feather light** and only the **slightest** degree of negligence sufficient to impose liability on the Jones Act employer. **Olivier v. Best Workover, Inc.**, 94-994 (La.App. 5th Cir. 1/30/96), 669 So.2nd 476. Notably, it is uncontested that Mr. Loforte was a Jones Act seaman aboard the M/V Scot B on the date of his accident.

Plaintiff contends that defendant, Who Dat Towing, was negligent in several respects in the causation of his accident. Firstly, despite Loforte's lack of experience as a maritime worker, he was hired as a deck hand by the captain of the M/V Scot B, and was afforded no training, safety manuals, or any instructions of any kind as to proper techniques to employ in maintaining a lookout, or in untying cable aboard a vessel. He contends that the Who Dat Towing and/or M/V Scot B was negligent in inadequately crewing the vessel; and additionally contends that the captain was negligent in failing to account for the whereabout of his single crew member before moving the vessel. This breach of duty by the captain

is especially grievous given his knowledge of Loforte's inexperience as a maritime worker. Additionally, plaintiff contends that inadequate lighting was a causative factor in his accident; and, if the court that the lighting conditions were inadequate aboard the M/V Scot B at the time of his injury, and that these inadequate lighting was a causative factor in his accident, the inadequate lighting alone is sufficient negligence to impart liability under the Jones Act.

## GENERAL MARITIME LAW

Additionally, plaintiff sought recovery under the general maritime law, and its associated duty that a vessel owner is responsible to any seaman aboard his vessel because of the unseaworthiness of that vessel. A vessel is deemed unseaworthy unless all of its appurtenances and *crew* are reasonably fit and safe for their intended purpose. A vessel owner has a very high duty towards a crewman to provide a seaworthy ship. This duty is absolute, nondeligble, and is completely independent of the Jones Act requirement to exercise reasonable care. Liability for an unseaworthy condition does not depend on negligence, fault, or blame. Thus, if a vessel owner does not provide a seaworthy vessel, no amount of *prudence* will excuse him, whether he knew or should have known of the unseaworthy condition. *Foster v. Destin Trading Corporation,* 96-0803 (La. 5/30/97); 695 So.2nd 509. In the context of this case, it is clear that the vessel owner of the M/V Scot B failed to provide an adequately trained crew by the mere act of hiring Mr. LoForte as the sole deckhand (thus necessitating that Loforte be

on call 24 hours per day during vessel operations), despite his confessed lack of maritime experience. Additionally, inadequate lighting which is a causative factor in the accident is itself sufficient to justify unseaworthiness of the M/V Scot B. Additionally, the failure to provide safety manuals, instructions, and/or personal communication devices (whereby the deck hand can communicate directly with the wheel house whether he is insight or out of sight) would also adequately support a finding of unseathworthiness of the M/V Scot B.

This is a case of contending experts. Plaintiff's treating physician, orthopedic surgeon, Dr. Wilmot Ploger, M.D. has indicated that Loforte requires additional surgery; and his recommendation is not opposed by the independent medical examiner, Dr. Robert Steiner. Rather, Dr. Steiner would perform additional diagnostic testing before making a definitive recommendation about additional surgery.

There is also a dispute about loss of wages and loss of earning capacity. Contending economic experts, using contending data, have arrived at varying conclusions depending upon the numbers and methodology employed. However, it should be noted that plaintiff does not contend that he is permanently and totally disabled as a result of the injuries. He does, however, contend that he is temporarily totally disabled, and will remain so until such time as his additional cervical surgery has been performed, and he has opportunity to obtain maximum

medical improvement following that surgery. It is only then that his permanent disability status can be adequately assessed.

Finally, defendant, Who Dat Towing, has raised as a defense the alleged failure of Loforte to mitigate his damages. Specifically, defendant would assert that Loforte's continued use of tobacco following his injury constitutes in law a failure by him to mitigate his damages. That conclusion is simply not justified under existing case law. Under our law, an injured person must exercise diligence and care of a man of ordinary prudence to minimize his damages. It is indisputable that the burden rests with the wrong doer (i.e. the defendant) to show the victims tortuous conduct has failed to mitigate his damages. In order to establish a failure to mitigate damages, the tortfeasor must demonstrate both a) that the injured party's conduct after the accident was unreasonable; *and* b) that the unreasonable had the consequence of aggravating the harm. *Hung v. Long*, 33,395-CA (La.App. 2nd Cir. 6/21/00), 763 So.2nd 811. Specifically, our courts have found that awards for future earnings and/or earning capacity are not subject to a reduction for failure to mitigate damages due to smoking. *Blanchard v. Means Industries, Inc.*, 93-715 (La.App. 5th Cir. 3/16/94), 635 So.2nd 288.

## **CONCLUSION**

In conclusion, the plaintiff, Loforte, whether this court pleases to employ the general maritime law standard of unseathworthiness or the negligence standards of the Jones Act, it is clear that he is entitled to the damages he seeks

under the facts of this case. Additionally, it is clear that there is insufficient evidence to find Loforte either completely and/or comparatively at fault in the causation of this accident; especially given his lack of maritime experience and the complete absence of any training and/or instructions given him at the time of his hiring by the master of the M/V Scot B.

Respectfully submitted,

_____
Ronna M. Steele (#20006)
301 Huey P. Long Avenue
Gretna, Louisiana 70053
(504) 361-4433
(504) 361-8288 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading was served upon all counsel of record this 5th day of June, 2001, by placing a copy of same in the US Mail, properly addressed, postage prepaid.

_____
RONNA M. STEELE